JAMES R. WARD et al. Appellants, *vs.* THOMAS C. CLENDENNING et al. Appellees.

*Opinion filed April 21, 1910—Rehearing denied June 8, 1910.*

1. ESTOPPEL—*when a hospital corporation is estopped to deny president's title to land.* A hospital corporation whose officers and directors knowingly allow title to the land upon which the hospital is to be built to be taken in the name of its president by an ordinary deed not disclosing any trust relation, and permit the building contract and architect's certificates to be drawn in his name as owner, sanctioning his acts in the matter and keeping secret a deed from him to the corporation, is estopped to deny his title as against parties claiming under a sale in a mechanic's lien suit to which the president, but not the corporation, was a party.

2. JUDGMENTS AND DECREES—*when corporation is bound by decree though not nominally a party to suit.* A hospital corporation whose attorney, though ostensibly acting for its president individually, is, in fact, employed and paid by the corporation to represent its interests and defend a mechanic's lien suit, in which it is as effectually represented throughout the entire suit as though it had been a party, is bound by the decree, and the fact that it was the real party in interest may be shown by parol evidence.

3. CLOUD ON TITLE—*when possession by the complainant is not necessary though premises are occupied.* The rule that a bill to remove a cloud from the title to premises which are occupied can not be maintained by a person who is not in possession does not apply where the primary relief sought by the bill is upon other

well established grounds and the removal of the cloud is prayed only as an incident to such relief.

4. COSTS—*an allowance to master is proper though parties paid stenographer to take testimony.* An allowance to the master in chancery of fifteen cents per hundred words for taking and reporting testimony is not improper, even though· the testimony was taken down and transcribed by a stenographer paid by the parties. (*Hoops* v. *Fitzgerald,* 204 Ill. 325, followed.)

APPEAL from the Circuit Court of Cook county; the Hon. LOCKWOOD HONORE, Judge, presiding.

On December 7, 1905, Thomas C. Clendenning filed his bill of complaint in the circuit court of Cook county against John F. Labahn, seeking to compel Labahn to convey to him certain real estate in the city of Chicago which Labahn had purchased at master's sale made under a decree of the superior court of Cook county in a suit by Napoleon Provost against Anthony Kozlowski and others to enforce a· mechanic's lien. The bill alleged that Labahn purchased the property in pursuance of a contract between himself and the successful lien claimants, by the terms of which Labahn agreed to bid in the premises at the master's sale for not less than $22,000, and to pay for the same with receipts to be signed by the lien claimants for the amounts found due them by said decree and with money to be furnished by them; also to secure a master's deed if the premises should not be redeemed, and hold the property in trust for the other parties to the contract, to collect the rents, issues and profits, pay the taxes and assessments, sell and convey the premises for not less than $22,000 upon the written consent of the beneficiaries, and pay over the proceeds of sale, declared by the contract to be personal property, and the surplus of rents, to the *cestuis que trust* in proportion to the amounts of their respective liens as found by said decree. The bill further alleged that Clendenning had purchased the interests of all the beneficial

owners of the premises, and had requested Labahn to convey the premises to him but that Labahn had refused to comply with the request. The prayer is that Labahn be required to make such conveyance. Labahn answered the bill, admitting the purchase of the premises by him in pursuance of the contract, as alleged in the bill, and that he held the title to the premises as trustee under the terms and provisions of the said contract, but alleged that he had no knowledge concerning the purchase by Clendenning of the interests of the beneficial parties to the contract, and submitted that such parties should be made defendants to the bill. Clendenning filed a replication and the cause was referred to the master. Thereafter Napoleon Provost and Andrew J. Graham were, upon their petitions, permitted to become defendants, and each filed an answer to the bill, alleging that Provost was one of the persons in whose favor liens had been established in the suit of Provost against Kozlowski and others and was one of the parties to the contract under which Labahn purchased and held the said premises, but denying that Clendenning had acquired the interest of Provost in the premises or his rights and interests under said contract. They also filed cross-bills, making numerous persons defendants, and some of the new defendants answered and filed cross-bills, which resulted in a large number of cross-bills, demurrers, answers and replications, presenting a great variety of issues for determination by the circuit court, only a few of which, being the issues formed upon the cross-bill filed by Labahn, the original defendant, are involved in this appeal.

By his cross-bill Labahn claims title to the premises by virtue of the master's deed issued to him as the purchaser at the sale under the decree rendered by the superior court in the mechanic's lien suit, but as trustee for the uses and purposes set forth in the contract between himself and the claimants who had established liens in that proceeding, and alleges that the interests of such claimants in the real es-

tate was not subject to levy and sale under execution or to sale and transfer by act of the parties; that the cross-complainant has never been able to obtain possession of the real estate, and is informed and believes that Anthony Kozlowski, or St. Anthony's Hospital, Home for the Aged and Orphanage of the Polish Catholics of the Diocese of Chicago, (which will be hereinafter referred to as St. Anthony's Hospital,) is now in possession of the same; that the premises were sold for taxes in 1902 and a tax deed was issued to Paul MacGuffin on September 26, 1904; that on account of the tax deed, and because he was unable to deliver possession, he has not been able to sell the premises; that there appears of record in the recorder's office of Cook county a trust deed filed July 16, 1902, from St. Anthony's Hospital, conveying said premises to William Roulet to secure one hundred and twenty bonds of $500 each, and that the same is a cloud upon his title; that the hospital acquired all its rights in the premises from Kozlowski without consideration and during the pendency of the mechanic's lien proceedings in the superior court, to which Kozlowski was a party, for the purpose of evading the rights of the lien claimants and with full notice of the pendency, nature and scope of the proceedings, and that the decree under which the master's sale was had was entered June 30, 1902, after a long litigation establishing mechanics' liens for work done and material furnished in erecting a hospital building on the said real estate. The cross-bill makes Provost, Graham, Clendenning, Kozlowski, St. Anthony's Hospital, Roulet, individually and as trustee, James R. Ward, MacGuffin, and other parties, defendants, and prays for a decree adjudging Labahn to be the owner of the premises in fee simple, in trust for the uses and purposes set forth in said contract or trust agreement; that the title to said real estate be quieted; that the trust deed from St. Anthony's Hospital to Roulet be set aside and removed as a cloud upon the title; that full

245—14

power be declared and conferred upon Labahn, as trustee, to sell and convey said real estate free and clear of all liens and encumbrances, and for general relief.

The defenses to Labahn's cross-bill, so far as material upon this appeal, are set forth in the answer of James R. Ward thereto. This answer alleges that St. Anthony's Hospital is a corporation organized under the laws of this State for religious and benevolent purposes; that Kozlowski was the bishop of a religious diocese having a church near the premises in question and was also president of the hospital corporation, and held in trust all conveyances of real estate for the use and benefit of the hospital; that the legal title to the premises in question was taken in the name of Kozlowski, and was until June 7, 1900, held by him in trust for the hospital; that St. Anthony's Hospital was for many years prior to the last mentioned date, and has ever since been, in the actual possession and occupancy of the premises, and that such possession was notice to the world of its rights and interests in the premises; that on June 7, 1900, Kozlowski made a written declaration of trust and conveyed the premises to St. Anthony's Hospital; that thereafter, on June 15, 1902, the hospital conveyed the premises to Roulet in trust, to secure one hundred and twenty bonds of $500 each; that certain of these bonds were delivered to Kozlowski, others were retained by Roulet and the remainder were delivered to and are held by Ward. The answer further alleges that at the time Provost brought the proceedings in the superior court to enforce his lien St. Anthony's Hospital was in actual possession of the premises; that the hospital was not a party to that suit, and that the superior court did not have jurisdiction of the hospital or jurisdiction to enter a decree affecting its property when it rendered the decree from which Labahn claims to derive title to said premises, and that neither Labahn nor any other person acquired any interest in the premises by virtue of said proceedings or mas-

ter's sale, and that Labahn has never been in possession of the premises.

St. Anthony's Hospital permitted default to be taken against it upon all the cross-bills to which it was defendant except the cross-bill filed by Ward and Roulet, which sought a foreclosure of the trust deed from the hospital to Roulet, and the hospital answered that cross-bill, admitting the right of Ward and Roulet to the relief prayed for therein.

The various cross-bills were referred to the same master as the original bill, to take the evidence and report the same, with his conclusions of law and fact, to the court, and he filed a report making specific findings of fact upon the various matters in controversy and finding all the material allegations of the Labahn cross-bill proven, and recommending a decree in accordance with the prayer thereof and that the original bill be dismissed for want of equity. Ward and Roulet filed objections to the master's report, which were overruled by the master and were renewed as exceptions in the circuit court. None of the other parties filed objections or exceptions to the report. The court overruled the exceptions and entered a decree in accordance with the master's findings, dismissing the original bill for want of equity; declaring the trust deed from the hospital to Roulet null and void and a cloud upon the title; adjudging the equitable and legal title to the premises to be in Labahn, with full power to sell and convey the same, free and clear of all charges and encumbrances, for not less than $22,000, and directing Labahn, upon sale being made, to pay MacGuffin $604.04 in satisfaction of all rights under his tax deed, and to divide the balance of the proceeds of sale between Clendenning and Provost in proportion to their respective interests as found by this decree, the share of Provost, however, being declared subject to the rights of Graham and certain other defendants and the determination of such rights being reserved by the court for fur-

ther consideration. The master's fees, amounting to $500, for taking and reporting testimony and for his conclusions on the law and the evidence were approved and ordered apportioned and taxed as follows: Against Clendenning $115.75; against Labahn, trustee, $282; against Roulet $51.25, and against Ward $51; and the court, finding that Clendenning had paid all the master's fees, ordered Labahn, Roulet and Ward to pay Clendenning, within five days, the amounts so apportioned to and taxed against them, and that in default thereof execution issue in favor of Clendenning. Ward, personally and as successor in trust to Roulet, and St. Anthony's Hospital, have prosecuted this appeal from that decree.

There is no material conflict in the evidence produced before the master. The controversy in this court relates to the conclusions to be deduced from the proven facts and the law applicable thereto. So far as material to a consideration of the questions presented upon this appeal the facts are as follows:

Prior to April 1, 1898, the Parish of All Saints was an independent Catholic society owning a church, school and parish residence on Lubeck street, in the city of Chicago, within the Polish Catholic diocese of Chicago, of which Anthony Kozlowski, who lived in said parish house, was the bishop. The members of this parish were conducting a hospital in a rented building on Homer street, near the parish church, for the benefit of the aged, sick and orphans of the diocese. Early in the year 1898 certain members of the parish, together with the bishop, concluded to purchase grounds on which to erect a hospital. They selected for this purpose the premises in question, located on Franklin street and lying immediately north of the church, school and parish residence and separated therefrom only by a public alley. The premises were owned by Daniel F. Crilly, who agreed with Kozlowski and certain members of the parish to sell the same for $5775, and a cash payment of

$200 was thereupon made to Crilly with money loaned by Jacob Dziewior, who was treasurer of the Parish of All Saints and one of the promoters of the new hospital. Kozlowski, Dziewior and other members of the parish then concluded to organize a new corporation. James R. Ward, one of the appellants, who was an attorney of Chicago, was consulted and was employed to obtain a charter. St. Anthony's Hospital was then incorporated under the laws of this State, the charter being filed for record in the recorder's office of Cook county on August 5, 1898. The object of the corporation, as stated in its charter, is "to nurse the sick, aged, and to take care of the orphanage." Bishop Kozlowski was a member of the first board of directors and was president of the corporation from its organization until his death, in 1906.

In order to raise funds with which to pay for the real estate purchased from Crilly and to erect a hospital building thereon it was proposed to solicit donations and loans from members of the parish and from other people, and all the money paid for the real estate and for the construction of the building was raised in this manner. Dziewior, the treasurer of the parish, was also the custodian of this fund and was treasurer of the hospital after its incorporation. On October 15, 1898, there was about $2300 in the fund, which was paid to Crilly, who thereupon executed a deed conveying the property, at the request of the officers of the hospital, acting under Ward's advice, to Kozlowski. The deed was recorded October 17, 1898, and from that time until March 10, 1902, the title stood of record in the name of Kozlowski, nothing appearing therefrom to indicate that St. Anthony's Hospital had any interest in the premises.

On May 17, 1899, Kozlowski entered into a written contract with Napoleon Provost, a mason contractor, by which Provost agreed to do the mason work in the construction of a hospital building on the real estate in ques-

tion in accordance with plans and specifications therefor which had been prepared by an architect, Kozlowski being described in the contract as the owner of the real estate on which the building was to be erected, and nothing appearing therein to indicate that any other person or corporation was interested in the real estate or in the construction of the building. Provost entered upon the performance of the contract, and as the work progressed the architect issued certificates, addressed to "Bishop Kozlowski, proprietor," showing the amount then due Provost under the contract for work done on the building. Upon the receipt of these certificates Provost presented them to Kozlowski, who took Provost to Dziewior and directed the latter to pay the money. If Dziewior had funds in his hands for such purpose he made payment as directed by Kozlowski, otherwise Provost was informed that he would have to wait until Kozlowski had obtained more contributions. On November 14, 1899, Kozlowski and Provost entered into a supplemental contract purporting to change the terms of payment, in which the hospital building is referred to as being owned by Kozlowski. Certificates issued by the architect for $3000 and $4000, respectively, being unpaid, Provost, shortly prior to December 12, 1899, discontinued work on the building, and on said date appellant Ward, as attorney for Kozlowski, and who had been employed by St. Anthony's Hospital to see that the contracts for the construction of the building were in proper form and duly executed, notified Provost, in writing, countersigned by Bishop Anthony Kozlowski, to proceed with the work; that he would be held to a full performance of the contract of November 14, and that if the work was not completed within the time limited by the contract, Provost would be held responsible for all damages that the bishop might sustain or incur and that Ward would take such steps as might be necessary to protect the rights of the bishop in the premises. Thereafter, on January 9, 1900,

Provost notified Kozlowski, in writing, that if the money due on the architect's certificates should not be paid to him within ten days he would discontinue the mason work of the building. The money was not paid, and on February 7, 1900, Provost filed his claim for lien, verified by his affidavit, with the clerk of the circuit court of Cook county, and on February 12, 1900, filed his bill in the superior court to enforce the lien. Kozlowski and certain lien claimants were made defendants to this suit. Kozlowski, by appellant James R. Ward as his solicitor, answered the bill, denying that anything was due Provost under the contract and denying his right to a lien and to the enforcement thereof against the premises on account of breach of contract by Provost, but making no mention of any claim of title to the premises by St. Anthony's Hospital or otherwise denying the absolute ownership of the premises by Kozlowski. Intervening petitions were filed by other contractors to enforce their liens against the same premises. The proceedings, after a long and protracted litigation, the defense being made by Ward, as attorney of record for Kozlowski, resulted in a decree finding Provost and certain of the intervening petitioners entitled to liens against the premises and directing a sale by the master, which was made and the premises were purchased by Labahn under a contract with the successful lien claimants, as set out in the original bill herein. St. Anthony's Hospital was not a party of record to the mechanic's lien proceedings. At the hearing before the master in that case on July 1, 1901, Ward, as solicitor for Kozlowski, called as a witness the secretary of the hospital and attempted to show by him certain facts connected with the purchase and subsequent possession of the premises, the purpose apparently being to establish, by this testimony, a trust in Kozlowski for the use of St. Anthony's Hospital. Objection was made, however, and the master refused to permit such facts to be proven, on the ground that the trust, if any, could not be

shown by parol. No attempt was made to show that Kozlowski had on June 7, 1900, executed a deed, hereinafter mentioned, declaring such trust and conveying the premises to St. Anthony's Hospital, and that deed had not at that time been recorded.

After Provost abandoned the building other contractors were engaged to complete the same, and some time during the year 1900 the hospital moved from the old building on Homer street into the new building. On June 7, 1900, Kozlowski, acting under the advice of Ward, executed a deed conveying the premises in question to St. Anthony's Hospital and declaring therein that said real estate was conveyed to and held by him in trust for the sole use and benefit of the hospital, and delivered the same to the secretary of the hospital. This instrument was not filed for record until March 10, 1902. Thereafter, on July 15, 1902, St. Anthony's Hospital conveyed the property to William Roulet, as trustee, to secure one hundred and twenty bonds, of the denomination of $500 each, issued by the hospital, which deed was recorded on July 16, 1902. A portion of these bonds were delivered to Kozlowski without any consideration and were afterwards surrendered to the hospital; others were retained by Roulet to compensate him for services as trustee under the trust deed, and the remainder of the bonds were delivered to and are held by Ward as security for the payment of $10,300 due him for legal services rendered by him for St. Anthony's Hospital and Kozlowski, such services including those rendered by him in the case of Provost against Kozlowski and others in the superior court.

Appellants contend that the decree of the circuit court should be reversed, first, because St. Anthony's Hospital was not a party to the proceedings in the superior court under which Labahn claims title, and it was therefore not divested of its rights in and title to the premises by the decree entered therein or by the master's sale made in pur-

suance of such decree; second, because the decree of the circuit court removes the trust deed to Roulet as a cloud upon Labahn's title, and a bill to remove a cloud from title to premises which are not vacant and unoccupied cannot be maintained by one not in possession; third, because the court allowed the master fees at the rate of fifteen cents per hundred words for taking and reporting testimony which was taken down and transcribed by a stenographer employed and paid by the parties and not by the master; and fourth, because the court ordered the payment of $604.04 to MacGuffin on account of his pretended tax deed, notwithstanding the fact that no judgment, precept, notice of redemption or affidavit in compliance with the statute was given in evidence to sustain the tax deed.

JAMES R. WARD, and FRANK MACH, for appellants:

The decree on the cross-bill of Labahn in effect removed the trust deed to Roulet as a cloud upon Labahn's title. A bill to remove a cloud and quiet title cannot be maintained unless it alleges, and the proofs sustain the allegation, that the complainant is in possession of the land or that it is vacant and unoccupied. *Delaney* v. *O'Donnell,* 234 Ill. 112; *Whitney* v. *Stevens,* 97 id. 488; *Lister* v. *Glos,* 236 id. 96.

The Mechanic's Lien law of 1895 was in force at the time the contracts sought to be enforced in said proceeding were entered into, and the rights of the parties thereto were governed by that law. *Treloar* v. *Hamilton,* 225 Ill. 105.

St. Anthony's Hospital was a necessary party to the mechanic's lien suit. The statute (chap. 82, sec. 11,) makes it the duty of the complainant to make all persons parties who may have any legal or equitable claim to the whole or any part of the premises upon which a lien may be attempted to be enforced under the provisions thereof. It is the duty of the complainant to see and know that he has before the court all necessary parties or his decree will not

be binding. *Hopkins* v. *Lead Co.* 72 Ill. 378; *Burr* v. *Bloemer,* 174 id. 641; *Gaytes* v. *Bank,* 85 id. 257; *Granquist* v. *Tube Co.* 240 id. 139; *O'Brien* v. *Gooding,* 194 id. 474.

Making Anthony Kozlowski a party to the suit to enfore a mechanic's lien did not dispense with the necessity of making St. Anthony's Hospital a party. The *cestui que trust,* under the Mechanic's Lien law, is an indispensably necessary party. *Lomax* v. *Dore,* 45 Ill. 381; *Williams* v. *Chapman,* 17 id. 423; *Rodman* v. *Quick,* 211 id. 550; *Williams* v. *Vanderbilt,* 145 id. 244; *Clark* v. *Manning,* 95 id. 581; *Dunphy* v. *Riddle,* 86 id. 27; *Crowl* v. *Nagle,* 86 id. 437; *Scanlan* v. *Cobb,* 85 id. 300.

No one is bound by a decree to which he is not a party—it is a nullity. Nor by a decree against another party, although acting in his behalf, who has no real interest in the subject matter of the litigation. *Gaytes* v. *Bank,* 85 Ill. 258; *Rodman* v. *Quick,* 211 id. 550.

In mechanics' lien suits the rights of a person who is not made a party are not affected by the decree or any proceeding under it. *Dunphy* v. *Riddle,* 86 Ill. 27.

The law does not require a person having an interest in a suit to voluntarily become a party to the same or be concluded by the decree or judgment. *Hopkins* v. *Lead Co.* 72 Ill. 378.

DUNN & HAYES, and ARTHUR M. COX, for appellees Thomas C. Clendenning and John F. Labahn:

The hospital association having clothed Kozlowski with an apparent title to its property and an apparent authority over the same, is estopped to deny such title or authority. 16 Cyc. 774.

The hospital association having, without objection and with knowledge of the facts, suffered Kozlowski to make improvements and to incur liabilities therefor in connection

with its property, under a claim of title or right, is now estopped to deny such title or right to the prejudice of the lienors, who acted in reliance on and have been misled by its conduct.  16 Cyc. 766.

The lien creditors were in the nature of encumbrancers by virtue of the statute.  A *bona fide* encumbrancer of the legal title in land will be protected against a prior equitable title of another of which he had no notice.  *Robbins* v. *Moore*, 129 Ill. 30; *Emmons* v. *Moore*, 85 id. 305.

The owner of the equitable title cannot defeat the rights of a creditor who has acquired a lien, by giving him notice.  Such a creditor stands in the same position as a purchaser without notice.  *Smith* v. *Willard*, 174 Ill. 538.

One who takes a conveyance without knowledge of secret interests will be protected.  *McDaid* v. *Call*, 111 Ill. 298; *McNab* v. *Young*, 81 id. 12.

If, in making a contract or in a course of dealing, the title of one party or the other to the property involved in the transaction is recognized and the dealing proceeds upon that basis, both parties are ordinarily estopped to deny that title or to assert anything in derogation of it.  16 Cyc. 802; *Welsch* v. *Bank*, 94 Ill. 191.

WELLS & BLAKELEY, for Napoleon Provost and other appellees:

When a bill to foreclose a mechanic's lien is filed against one holding title as trustee with active duties to perform, it is sufficient to make the trustee a party defendant thereto, and the *cestuis que trustent* under such an active trust are not necessary parties to the foreclosure of such a lien.  *McGraw* v. *Bayard*, 96 Ill. 146; *Willis* v. *Henderson*, 4 Scam. 13.

One in whose behalf and under whose direction a suit is prosecuted or defended in the name of some other person is precluded by the judgment, and parol evidence is admissible to show who the real parties in interest are and

that they conducted the litigation in the name of another. *Cheney* v. *Patton,* 144 Ill. 373; *Smith* v. *Express Co.* 135 id. 279; *Harding* v. *Fuller,* 141 id. 308; *Lightcap* v. *Bradley,* 186 id. 510; *Bennitt* v. *Mining Co.* 119 id. 1.

A corporation formed to conduct a hospital is not a corporation formed for religious worship. *Hamsher* v. *Hamsher,* 132 Ill. 273.

Even though the parties, at their own expense, have employed a stenographer to take and transcribe the testimony and have paid the stenographer fifty cents a page for so doing, and the master used the transcript so made by the stenographer without expense to him in making up his report, still the master is entitled to charge at the rate of fifteen cents per hundred words for taking the testimony, in accordance with the provision of the statute fixing the master's fees. *Hoops* v. *Fitzgerald,* 204 Ill. 325.

Relief in this case is sought upon well established equitable grounds other than to remove a cloud from the title, and in such a case the court has power to remove the cloud from the title even though the complainant may not be in possession of the premises. *Booth* v. *Wiley,* 102 Ill. 84; *Gilbreath* v. *Dilday,* 152 id. 207; *Gage* v. *Parker,* 103 id. 528; *Miller* v. *Cook,* 135 id. 190; *Glos* v. *Kenealy,* 220 id. 540; *Clay* v. *Hammond,* 199 id. 370.

Under the statute a decree cannot be entered removing a tax deed except upon payment to the holder of the tax title of the amount of the taxes shown by the evidence to have been paid by him, with the legal rate of interest; and this is irrespective of whether or not the validity of said tax deed is established. *Cotes* v. *Rohrbeck,* 139 Ill. 532; Starr & Cur. Stat. chap. 120, sec. 226.

Mr. JUSTICE COOKE delivered the opinion of the court:

It is contended on the part of appellants that the circuit court erred in its finding and decree that St. Anthony's Hospital was bound by the decree of the superior court of

Cook county in the suit to enforce a mechanic's lien prosecuted by Napoleon Provost against Anthony Kozlowski and others. This contention is based upon the fact that St. Anthony's Hospital was not made a party to the mechanic's lien suit. While it is now apparent that the title to the premises in question was taken in Bishop Kozlowski for the benefit of the corporation and that St. Anthony's Hospital was the actual or equitable owner of the same, Kozlowski was held out to the world as the absolute owner of the premises. Appellants seek to avoid the effect of this by showing that the daily newspapers of Chicago published articles describing the hospital which was about to be erected under the patronage of Bishop Kozlowski and giving a description of the proposed building and stating its location; that circulars to the same effect were freely distributed among the citizens of Chicago, and that the time of the breaking of the ground for the erection of the building was made the occasion of a general celebration by the people of that diocese. The record, however, fails to disclose any evidence of any publication of the fact that the St. Anthony's Hospital corporation owned or claimed to own any interest in these premises, and there was no proof whatever that this claim was ever brought to the attention or knowledge of Napoleon Provost until at the very close of the hearing before the master in the mechanic's lien suit. On the contrary, Bishop Kozlowski was held out as the owner of this property by everyone connected with St. Anthony's Hospital. The record title was in him, and he, as proprietor and owner, contracted with Provost for the erection of the hospital building. During the progress of the erection of the building the architect's certificates were issued to Bishop Kozlowski as proprietor, and each recited that the amount therein designated as due was for work done upon his building. These acts were all done with the full knowledge and consent of the officers and directors of St. Anthony's Hospital and appellant James R.

Ward, its attorney. Bishop Kozlowski himself was a director and the president of the corporation. . Appellant · Ward was the attorney for St. Anthony's Hospital, and he advised the placing of the title in Kozlowski, supervised the drawing and execution of the building contract entered into between Provost and Kozlowski, prepared the form in which the architect's certificates were issued to Provost as the work progressed, and advised the officers of St. Anthony's Hospital throughout the whole transaction. The deed from Crilly to Bishop Kozlowski was in the ordinary form and did not disclose the trust relation. The deed of June 7, 1900, by which Bishop Kozlowski conveyed these premises to St. Anthony's Hospital and which contained the declaration of trust, was executed in Ward's office, but, as was testified to by Dr. Pollach, one of the incorporators of St. Anthony's Hospital and the superintendent of the hospital, it was held in secrecy and was not filed for record until March 10, 1902. That every officer of St. Anthony's Hospital knew of and acquiesced in the holding of the record title to this property by Bishop Kozlowski and sanctioned all his acts and dealings with Napoleon Provost in respect to the erection of the hospital building is uncontroverted. Under this state of facts, alone, we are of the opinion that the circuit court was warranted in finding that the corporation was bound by the decree in the suit of Provost against Kozlowski. By its own acts it is now estopped to deny the title of Kozlowski as against those claiming title under the proceedings brought by Provost to enforce his mechanic's lien against the premises. ·

But there is a further reason why St. Anthony's Hospital was bound by this decree. James R. Ward, the principal appellant here, was employed as the attorney for the incorporators of St. Anthony's Hospital. He advised them in reference to the incorporation and secured the charter for them. After the incorporation he was retained as attorney, and during the time that Provost was engaged in

the erection of the building under his contract he repre-
sented the corporation. When Provost filed his claim for
mechanic's lien and brought his suit to enforce the lien,
Ward was employed, not by Bishop Kozlowski individu-
ally, but by the corporation, to defend this suit. While he
appeared of record as the attorney and solicitor for Koz-
lowski, he was, in fact, representing St. Anthony's Hospi-
tal and the corporation agreed to pay him for his services
rendered in that litigation. St. Anthony's Hospital actu-
ally conducted the defense from the time the suit was in-
stituted until its final determination, and was, as a matter
of fact, as effectually represented in the trial of that cause
as though it had been made a party defendant, and by rea-
son of that fact the decree entered therein is binding upon
it. One in whose behalf or under whose direction a suit
is prosecuted or defended will be bound by the judgment
or decree rendered in it, and parol evidence will be admit-
ted to show who is the real party in interest and that such
party conducted or defended the litigation in the name of
another person. *Bennitt* v. *Star Mining Co.* 119 Ill. 9;
*Smith* v. *United States Express Co.* 135 id. 279; *Cheney*
v. *Patton,* 144 id. 373; *Lightcap* v. *Bradley,* 186 id. 510.

It is next urged that the decree is erroneous because it
removes the Roulet trust deed as a cloud upon the title to
this property when the facts show that the property is not
vacant and unoccupied and that Labahn is not in posses-
sion, and the familiar rule is invoked that a bill to remove
a cloud from the title to premises which are occupied can
not be maintained by one who is out of possession. This
rule applies only where the sole object of the bill is to re-
move a cloud from the title, and not where the primary
relief sought is upon other and well established grounds
and the removal of the cloud is prayed only as an incident
to that relief. (*Booth* v. *Wiley,* 102 Ill. 84; *Gilbreath* v.
*Dilday,* 152 id. 207; *Glos* v. *Kenealy,* 220 id. 540.) In
this case it was not the sole object of the Labahn cross-

bill to remove the trust deed as a cloud upon the title. That relief was merely incidental to the main purpose of the cross-bill, and the court having obtained jurisdiction and having all the parties before it, had the power to remove this cloud from the title.

The allowance by the court to the master of fifteen cents per hundred words for taking and reporting the testimony as a part of his fees is assigned as error, the contention being that the master is not entitled to this allowance for the reason that the testimony was taken down and transcribed by a stenographer who was employed and paid by one of the parties and not by the master. This question was raised in *Hoops* v. *Fitzgerald,* 204 Ill. 325, and the facts here are identical with the facts in that case. The order of the court as to costs was proper.

It is finally contended by the appellants that the court erred in ordering the payment of $604.04 to MacGuffin to reimburse him for the money paid out on account of his pretended tax deed, for the reason that there was no proof made as to the legality of the tax deed. The question of the legality of the tax deed of MacGuffin was not in issue. By his cross-bill Labahn sought to have this tax deed set aside and removed as a cloud upon his title, and under the statute, before he is entitled to that relief, he is required to pay to the party holding the tax deed all taxes and legal costs, together with such penalties as it shall appear the holder of such deed or his assignors have properly paid in procuring the deed. (Hurd's Stat. chap. 120, sec. 224.) In any event, the disposition of this fund does not affect the appellants under the view we have taken of the other matters in controversy.

We find no error in the record, and the decree of the circuit court will therefore be affirmed.

*Decree affirmed.*