PLYMALE ET AL., APPELLANTS, *v.* KEENE, RESPONDENT.

(No. 5,926.)

(Submitted May 20, 1926.   Decided June 14, 1926.)

[247 Pac. 554.]

*Cancellation of Instrument—Deeds—Deposit With Third Person for Delivery to Grantee on Death of Grantor—Effect of Transaction—Equity—Findings—When Deemed Conclusive on Appeal.*

Equity—Findings—When Deemed Conclusive on Appeal.
1.   Where the evidence in an action for the cancellation of a deed was in sharp conflict as to the mental condition of the grantor at the time of its execution, the finding of the trial court that he was competent and not acting under duress or undue influence will not be disturbed on appeal.

Deeds—Deposit by Grantor With Third Person With Direction to Deliver to Grantee After Death of Grantor—When Delivery Deemed Complete as of Date of Deposit.
2.   If a deed, fully executed and so drawn as to convey a present title, is deposited by the grantor with a third person with directions to deliver it to the grantee after the death of the grantor, and the grantor in making such deposit reserves no power to recall or modify it or thereafter to control in any manner its disposition, the delivery will be deemed complete as of the date when the deed is deposited, the intention of the grantor at the time of passing it to such third person being the controlling factor in determining the question of delivery or nondelivery.

Same—Deposit With Direction to Deliver at Death of Grantor—Cancellation—Relinquishment of Control Over Deed by Grantor—Testimony—Immateriality.
3.   The fact that an officer of the bank with which a deed was deposited by the grantor with instructions to deliver it to the grantee, his son, after the grantor's death, testified that if the grantor had demanded the return of the deed his request would have been complied with was properly disregarded by the trial court in arriving at the conclusion that when it was deposited the grantor did not intend to retain any control or dominion over it.

Same—Delivery to Grantee After Death of Grantor on Condition—Effect.
4.   The deposit of a deed to be delivered on the performance of a condition after the death of the grantor—such as the payment of funeral expenses—stands on the same footing as a deposit for delivery unconditionally after death, and the grantee may

1.   See 2 R. C. L. 204.
2.   Deposit for delivery after grantor's death, see notes in 53 **Am. St. Rep.** 552; 38 **L. R. A.** (n. s.) 942.   See, also, 8 R. C. L. 995.

after the grantor's death perform the condition and take title as of the date when the deed was deposited.

Same—When Instrument Deemed Deed, and not Will.

   5. An instrument having otherwise the general formalities of a deed will be construed as a deed, and not as a will, where it appears that the maker intended that the conveyance should vest on execution of the paper, though the absolute enjoyment of the estate passed was postponed until the death of the grantor; nor does the fact that the grantor retains the enjoyment of the property by exacting rentals from the grantee make the instrument a will.

[1]  Appeal and Error, 4 **C. J.**, sec. 2855, p. 883, n. 33.
[2]  Deeds, 18 **C. J.**, sec. 100, p. 205, n. 70; sec. 114, p. 210, n. 32.
[3]  Deeds, 18 **C. J.**, sec. 114, p. 208, n. 27; p. 210, n. 30; sec. 524, p. 432, n. 56; sec. 543, p. 439, n. 78; p. 440, n. 80.
[4]  Deeds, 18 **C. J.**, sec. 116, p. 211, n. 41.
[5]  Wills, 40 **Cyc.**, p. 1086, n. 49; p. 1087, n. 51, 52.

*Appeal from District Court, Broadwater County, in the Fourteenth Judicial District; Edgar J. Baker, a Judge of the Tenth District, presiding.*

ACTION by Myrtle K. and Olive K. Plymale against George P. Keene. Judgment for defendant affirmed.

*Mr. H. G. McIntire,* and *Mr. Frank T. Hooks,* for Appellants, submitted a brief; *Mr. Hooks* argued the cause orally.

Burden of Proof: See Jones on Evidence, 2d ed., sec. 1920; 2 Pomeroy's Equity Jurisprudence, 951; *Emerson-Brantingham Impl. Co.* v. *Anderson,* 58 Mont. 617, 194 Pac. 160.

Undue Influence: *Pritchard* v. *Henderson,* 3 Penne. (Del.) 128, 50 Atl. 217, 223; *In re Douglass Estate,* 162 Pa. 567, 29 Atl. 715, 716.

Nondelivery of Deed: *Moore* v. *Trott,* 156 Cal. 353, 134 Am. St. Rep. 131, 104 Pac. 578; *In re Miller's Estate (Adams* v. *Vander Las),* 129 Wash. 211, 224 Pac. 607; *Rhines* v. *Young,* 97 Wash. 437, 166 Pac. 642; *Bloor* v. *Bloor,* 105 Wash. 110, 177 Pac. 722; *Cook* v. *Brown,* 34 N. H. 460; *Campbell* v. *Genshlea,* 180 Cal. 213, 180 Pac. 336; *Keyes* v. *Meyers,* 147 Cal. 702, 82 Pac. 304; *Hayden* v. *Collins,* 1 Cal. App. 259, 81 Pac. 1120; *In re Cornelius Estate,* 151 Cal. 550, 91 Pac.

___

5.  See 8 **R. C. L.** 932.

329; *Bury* v. *Young,* 98 Cal. 446, 35 Am. St. Rep. 186, 33 Pac. 338; *Taft* v. *Taft,* 59 Mich. 185, 60 Am. St. Rep. 291, 26 N. W. 426; *Hayden* v. *Collins,* 151 Cal. 550, 81 Pac. 1120.

*Messrs. Kanouse & Schmitz,* for Respondent, submitted a brief; *Mr. Fred W. Schmitz* argued the cause orally.

Burden of Proof: See *Whaley* v. *Crittenden,* 192 Ala. 341, 68 South. 886; *Westphal* v. *Heckman,* 185 Ind. 88, 113 N. E. 299; *Thill* v. *Freiermuth,* 132 Minn. 242, 156 N. W. 260.

Mental Condition of Harvey L. Keene: *Magness* v. *Ditmars,* 81 Or. 598, 160 Pac. 527; *Pass* v. *Stevens,* 22 Ariz. 461, 198 Pac. 712; 18 C. J. 218, 219; 8 R. C. L. 944; 2 Pomeroy's Equity Jurisprudence, 951.

Undue Influence: *Sappingfield* v. *Sappingfield,* 67 Or. 156, 135 Pac. 333; *Mackall* v. *Mackall,* 135 U. S. 167, Ann. Cas. 1915D, 707–714, 34 L. Ed. 84, 10 Sup. Ct. Rep. 705.

Delivery of the Deed: *Nolan* v. *Otney,* 75 Kan. 311, 9 L. R. A. (n. s.) 317, 89 Pac. 690; *Bauman* v. *McManus,* 75 Kan. 106, 10 L. R. A. (n. s.) 1138, 89 Pac. 15; *Martin* v. *Flaharty,* 13 Mont. 96, 40 Am. St. Rep. 415, 19 L. R. A. 242, 32 Pac. 287; *Shaffer* v. *Smith,* 53 Okl. 352, 156 Pac. 1188; *Rice* v. *Carey,* 170 Cal. 748, 151 Pac. 135; *Donahue* v. *Sweeney,* 171 Cal. 338, 153 Pac. 708; *Williams* v. *Kidd,* 170 Cal. 631–639, Ann. Cas. 1916E, 703, 151 Pac. 1; 8 R. C. L., secs. 57, 60, 65.

"Deposit of a deed to be delivered on the performance of a condition after the death of the grantor stands on the same footing as a deposit for delivery unconditionally after the grantor's death, so that the grantee may after the death of the grantor perform the condition to take the title as of the date when the deed was deposited." (Note, Ann. Cas. 1915C, 381; *Dettmer* v. *Behrens,* 106 Iowa, 585, 68 Am. St. Rep. 326, 76 N. W. 853; *Stewart* v. *Wills,* 137 Iowa, 17, 114 N. W. 548; *Nolan* v. *Otney,* 75 Kan. 311, 9 L. R. A. (n. s.) 317, 89 Pac. 690; *Stockwell* v. *Shalit,* 204 Mass. 270, 90 N. E. 570; *Gammon* v. *Bunnell,* 22 Utah, 421, 64 Pac. 958.)

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

This action was instituted by Myrtle K. Plymale and Olive K. Plymale, sisters, against their brother, Gray P. Keene, to cancel a deed purported to have been executed by their father, Harvey L. Keene, to their brother. The litigants are the only heirs at law of Harvey L. Keene.

The plaintiffs alleged in effect that when their father signed the deed he was not competent to do so and, further, that the deed never was delivered.

The father of the litigants was for many years prior to his death a resident of Broadwater county, wherein he owned two farms, aggregating about 900 acres of land. One of the farms is called the home place, which consists of about 600 acres, and the other the Duck Creek, or lower, place. When Gray P. Keene was coming of age he told his father that if he would give him the lower place he, Gray, would remain with his father and help him, otherwise he wanted to go out and work for himself. The father promised to do as his son requested. On the lower place there was then a two-room log cabin. Some time after that, in 1907, father and son erected a nine-room house thereon; the father paid for most of the materials required while the son did the work or paid for the labor. The son himself set out an orchard, paying for the trees. The new house evidently was built in contemplation of the son's marriage, which took place the year the house was built. Gray P. Keene and his wife have lived there ever since.

Harvey L. Keene maintained feelings of affection toward his children at all times and was desirous of dividing his property between them. Mr. Keene, according to the testimony of Dr. Gilham, who was his physician for many years, was a man of decided views and of strict integrity. He was not given to vacillation once he had decided upon a policy. The doctor heard him "mention many times that he had fixed his property so that it would not come into litigation after his death."

As early as 1913 Harvey L. Keene made deeds, by the terms of which he, divided his lands. The home place was divided equally, as nearly as might be, between his daughters, Myrtle and Olive. What became of these deeds the record does not disclose, but in 1918 he made new deeds with the same purpose in mind. At this time Inez P. Keene, his wife, mother of the children, objected to signing the deeds; she told Mr. Keene he had no right to sign away her property. To obviate this objection he included her in the deeds in this fashion: the property intended for Gray P. Keene (the Duck Creek, or lower, place) he conveyed to him and Inez P. Keene; the property intended for Myrtle K. Plymale he conveyed to her and her mother, and he did likewise with the property intended for Olive K. Plymale. Even before this, it would seem from the testimony, the children of Harvey L. Keene were paying him rentals for the identical lands which he included in the deeds; each paid him $300 annually; and this policy was pursued to the date of his death. Inez P. Keene passed away October 19, 1921. As a consequence of that event Mr. Keene in the following December determined to redraft the deeds. At that time he was living at the home of Mrs. Myrtle K. Plymale in Townsend. On December 10, 1921, Gray P. Keene, at the instance of his father, telephoned his sister Olive that their father intended to change the deeds and requested her presence, but she did not respond. On that day Gray P. Keene, at the father's request and in his presence, copied new deeds from the old. The deeds were warranty in form and without condition. No change was made in the description of the property intended for Gray P. Keene. There was no change in the deeds to Myrtle and Olive except that by the new deeds Myrtle was given a small amount of additional land upon which trees were growing and Olive was deprived of that much. After the deeds were copied Gray and Myrtle compared them to see that no mistake had been made. Harvey L. Keene and his son then went to the First National Bank of Townsend where Harvey L. Keene signed and acknowledged

the three deeds before Miss E. C. Corey who was a notary public. Harvey L. Keene then called for three envelopes in which he placed the several deeds. All were indorsed substantially in like tenor. The envelope containing the Gray P. Keene deed reads: "The First National Bank of Townsend, Mont. Deliver to Gray P. Keene of Canton, Mont. after the death of Harvey L. Keene and his funeral expenses are paid." The envelopes were then deposited with the bank, and Miss Corey, for the cashier, executed three receipts. These appear to have been written upon stock forms in use by the bank. The one relating to the Gray P. Keene deed reads as follows:
"Not negotiable.                                        No. 10.

"Property deposited for safe keeping with the First National Bank, Townsend, Montana.

"Dec. 10, 1921.

"This certifies that H. L. Keene has deposited with the 1st Natl. Bk. Townsend for safe keeping, the following described property, viz.: 1 envelope containing deed to be delivered to Gray P. Keene after the death of Harvey L. Keene & his funeral expenses are paid. At owner's risk.

"E. C. COREY for Cashier.
"H. L. KEENE, accepted."

When the receipt was handed to Harvey L. Keene he signed it and delivered it to Gray P. Keene who retained it until after the death of his father.

Some months after Mr. Keene's death, which occurred December 22, 1922, Gray P. Keene filed an affidavit showing that his father's funeral expenses had been paid and received from the bank the envelope containing the deed. He then placed the deed of record. This suit resulted. The court found for the defendant, Gray P. Keene, and the plaintiffs appealed.

1. There was considerable testimony introduced respecting [1] the mental capacity of Harvey L. Keene at the time he made the deed. Mr. Keene had been in failing health for a number of years and the death of his wife, to whom he was greatly attached, was a heavy shock. Upon this feature of

the case there was a sharp conflict in the evidence, but the trial court found as a fact that on the 10th of December, 1921, Harvey L. Keene was mentally competent to make and did make the deed in question, and that he was not then acting under the duress or undue influence of any person. We shall not disturb this finding. (*Allen* v. *Petrick,* 69 Mont. 373, 222 Pac. 451; *Thomas* v. *Standard Development Co.,* 70 Mont. 156, 224 Pac. 870; *First Nat. Bank* v. *Robke,* 72 Mont. 527, 235 Pac. 327; *St. Onge v. Blakely,* 76 Mont. 1, 245 Pac. 532.)

2. In an exhaustive note to the case of *Jackson* v. *Jackson,* [2] 67 Or. 44, 135 Pac. 201, as reported in Ann. Cas. 1915C, page 373, it is stated that it is well settled that if a deed, fully executed and so drawn as to convey a present title, is deposited by the grantor with a third person with directions to deliver it to the grantee after the death of the grantor, and the grantor in making such deposit reserves no power to recall or modify the same, or thereafter to control in any manner the disposition of the deed, the delivery will be deemed complete as of the date when the deed is deposited. *Martin* v. *Flaherty,* 13 Mont. 96, 40 Am. St. Rep. 415, 19 L. R. A. 242, 32 Pac. 287, is cited in accord.

In a case found in Ann. Cas. 1915C, page 381, immediately following *Jackson* v. *Jackson,* the supreme court of Alabama (*Seeley* v. *Curts,* 180 Ala. 445, 61 South. 807) declared: "A grantor may deliver a deed to a third person, to hold until the grantor's death, and then to deliver it to the grantee. Such a delivery is perfectly valid; but the deed must be left with the depositary without a reservation by the grantor, express or implied, of the right to retake it or otherwise control its use."

In *Martin* v. *Flaharty, supra,* this court said that "a manual delivery of a deed is not an absolutely essential requisite to its validity," and that "the question of delivery is one of intention, and the rule is that a delivery is complete when there is an intention manifested on the part of the grantor to make the instrument his deed." The court cited *Wheelright* v. *Wheelright,* 2 Mass. 447, 3 Am. Dec. 66, in which Chief Jus-

tice Parsons said: "If a grantor deliver any writing as his deed to a third person, to be delivered over by him to the grantee, on some future event, it is the grantor's deed presently, and the third person is a trustee of it for the grantee." This is consistent with section 6846, R. C. 1921. (And see *Boicelli* v. *Giannini,* 65 Cal. App. 601, 224 Pac. 777.)

In the leading case of *Foster* v. *Mansfield,* 3 Metc. (Mass.) 412, 37 Am. Dec. 154, the eminent Chief Justice Shaw said: "Whether, when a deed is executed, and not immediately delivered to the grantee, but handed to a stranger, to be delivered at a future time, it is to be considered as the deed of the grantor presently, or as an escrow, is often matter of some doubt; and it will generally depend rather on the words used and the purposes expressed, than upon the name which the parties give to the instrument. Where the future delivery is to depend upon the payment of money, or the performance of some other condition, it will be deemed an escrow. Where it is merely to await lapse of time, or the happening of some contingency, and not the performance of some condition, it will be deemed the grantor's deed presently. Still it will not take effect as a deed until the second delivery, but when thus delivered it will take effect, by relation, from the first delivery."

This doctrine was followed by the equally eminent Justice Sharswood, in *Stephens* v. *Rinehart,* 72 Pa. St. 434. Most of the modern decisions "hold that a deposit of the kind under consideration operates as a conveyance as of the time of the deposit, either as a transfer *in praesenti* subject to an implied life estate in the grantor (see *Bury* v. *Young,* 98 Cal. 446, 35 Am. St. Rep. 186, 33 Pac. 338; *Wilhoit* v. *Salmon,* 146 Cal. 444, 80 Pac. 705) or as a transfer at the time of the second delivery relating back to the time of the deposit. (*Loomis* v. *Loomis,* 178 Mich. 221, 144 N. W. 552; *Haeg* v. *Haeg,* 53 Minn. 33, 55 N. W. 1114; *Hathaway* v. *Payne,* 34 N. Y. 92; *Stonehill* v. *Hastings,* 202 N. Y. 115, 94 N. E. 1068; *Crooks* v. *Crooks,* 34 Ohio St. 610; *Henry* v. *Phillips,* 105

[76 Mont. 403.]

Tex. 451, 151 S. W. 533.)'' (Note to *Jackson* v. *Jackson, supra.*) (*Davis* v. *Clark,* 58 Kan. 100, 48 Pac. 563; *Pentico* v. *Hays,* 75 Kan. 76, 9 L. R. A. (n. s.) 224, 88 Pac. 738.)

''The solution of the question of delivery or nondelivery in each case is based upon the intention of the grantor at the time of passing the deed to a third person.'' (*Williams* v. *Kidd,* 170 Cal. 631–639, Ann. Cas. 1916E, 703, 151 Pac. 1; *Donahue* v. *Sweeney,* 171 Cal. 388, 153 Pac. 708; *Follmer* v. *Rohrer,* 158 Cal. 755, 112 Pac. 544; *Cox* v. *Schnerr,* 172 Cal. 371, 156 Pac. 509; *Smith* v. *Smith,* 173 Cal. 725, 161 Pac. 495.)

Mr. Davey, cashier of the bank, over objection was permitted [3] to testify that if Harvey L. Keene had demanded the return of the deeds his request would have been complied with. The court properly disregarded this testimony. It had no bearing upon the fact situation presented. (*Loomis* v. *Loomis,* 178 Mich. 221, 144 N. W. 552.)

Mr. Keene deposited the deed with an express direction as to its delivery. As indicating his intention at that time he gave to his son the receipt for the envelope containing the Gray P. Keene deed. Nothing was said nor done by Harvey L. Keene to indicate that he retained in his mind any reservation with respect to the deed. The words ''for safe keeping,'' considered with the context, have no material bearing. If Harvey L. Keene ever intended to attempt to recall the deed from the depositary no one but himself ever knew it.

When one has the mental capacity to alter his intention with respect to a deed thus deposited but dies without doing so, there is ''but little reason for saying that his deed shall be inoperative, simply because, during life, he might have done that which he did not do. It is much more consonant with reason to determine the effect of the deed by the intention existing up to the time of death than to refuse to give it that effect because the intention might have changed.'' (From *Newton* v. *Bealor,* 41 Iowa, 334, quoted in *Martin* v. *Flaharty, supra.*)

After a careful study of the evidence we think the trial court was fully justified in finding that Harvey L. Keene, when he deposited the deed with the bank, did not intend to retain any control or dominion over it. The evidence is that he deposited the deed with the depositary with the full intention that it should there remain subject to be delivered to Gray P. Keene only upon his death and after the payment of his funeral expenses. If we regard the proof and omit surmise and conjecture this conclusion seems inevitable.

There is no evidence of any retention of control by the grantor. "All the circumstances tend to show a purpose on his part that there should be an immediate vesting of title in the grantee, the enjoyment alone being postponed until his death, and the intention of the grantor is recognized as the determining factor where the situation admits of doubt." (*Bauman* v. *McManus,* 75 Kan. 106, 10 L. R. A. (n. s.) 1138, 89 Pac. 15.)

Nor does the condition respecting the payment of the funeral **[4]** expenses change the situation. The weight of authority is that the deposit of a deed to be delivered on the performance of a condition after the death of the grantor, stands on the same footing as a deposit for delivery unconditionally after the grantor's death, so that the grantee may after the death of the grantor perform the condition and take the title as of the date when the deed was deposited. (Note to *Jackson* v. *Jackson, supra,* Ann. Cas. 1915C, 381, citing: *Dettmer* v. *Behrens,* 106 Iowa, 585, 68 Am. St. Rep. 326, 76 N. W. 853; *Stewart* v. *Wills,* 137 Iowa, 17, 114 N. W. 548; *Nolan* v. *Otney,* 75 Kan. 311, 9 L. R. A. (n. s.) 317, 89 Pac. 690; *Stockwell* v. *Shalit,* 204 Mass. 270, 90 N. E. 570; *McCurry* v. *McCurry* (Tex. Civ. App.), 95 S. W. 35; *Gammon* v. *Bunnell,* 22 Utah, 421, 64 Pac. 958.)

There is authority the other way. (*Taft* v. *Taft,* 59 Mich. 185, 60 Am. St. Rep. 291, 26 N. W. 426.) To what extent the doctrine of the majority rule may be carried is not now a perti-

nent subject of inquiry, but we have no doubt of its applicability in this case.

The deeds executed by Harvey L. Keene to his children were not testamentary dispositions. It is certain that he never intended to make a will. It is sometimes difficult to determine, in view of the surrounding circumstances and the language employed, whether the instrument in question is a will or a [5] deed. But it is pretty well settled that "an instrument having otherwise the general formalities of a deed will be construed as a deed, whenever it appears that the maker intended to convey any estate or interest whatever, to vest upon the execution of the paper, though the absolute enjoyment of the estate passed is postponed until the death of the grantor." (Note to *Ferris* v. *Neville,* 127 Mich. 444, 54 L. R. A. 464, 86 N. W. 960, as reported in 89 Am. St. Rep. 495; *Adams* v. *Broughton,* 13 Ala. 731; *Thompson* v. *Johnson,* 19 Ala. 59; *Stewart* v. *Stewart,* 5 Conn. 317; *Guthrie* v. *Guthrie,* 105 Ga. 86, 31 S. E. 40; *Bowler* v. *Bowler,* 176 Ill. 541, 52 N. E. 437; *Kelley* v. *Shimer,* 152 Ind. 290, 53 N. E. 233; *Hinson* v. *Bailey,* 73 Iowa, 544, 5 Am. St. Rep. 700, 35 N. W. 626; *Ward* v. *Ward,* 104 Ky. 857, 48 S. W. 411; *Exum* v. *Canty,* 34 Miss. 533, 569; *Hileman* v. *Bouslaugh,* 13 Pa. St. 344, 53 Am. Dec. 474.)

The fact that the grantor reserves the possession, use, enjoyment or profits of the property during his life does not make the instrument a will. (*Hall* v. *Burkham,* 59 Ala. 349; *Abney* v. *Moore,* 106 Ala. 131, 18 South. 60; *Bunch* v. *Nicks,* 50 Ark. 367, 7 S. W. 563; *Graves* v. *Atwood,* 52 Conn. 512, 52 Am. Rep. 610; *Seals* v. *Pierce,* 83 Ga. 787, 20 Am. St. Rep. 344, 10 S. E. 589; *Cates* v. *Cates,* 135 Ind. 272, 34 N. E. 957; *Saunders* v. *Saunders,* 115 Iowa, 275, 88 N. W. 329; *Love* v. *Blauw,* 61 Kan. 496, 78 Am. St. Rep. 334, 48 L. R. A. 257, 59 Pac. 1059; *Beebe* v. *McKenzie,* 19 Or. 296, 24 Pac. 236.)

The grantor in this instance retained the enjoyment of the property by exacting rentals from the grantees.

Mr. Justice Lumpkin, in *West* v. *Wright,* 115 Ga. 277, 41 S. E. 602, observed that the "original tendency was toward holding that papers indicating an intention to postpone enjoyment by the persons claiming to be grantees till after the death of the persons executing the papers should be classed as wills. This tendency in time yielded to another, namely, that it was the sounder policy in case of doubt to declare that the instrument was a deed, and thus make it effectual, when holding it to be testamentary would, for want of the requisite number of witnesses, render it nugatory. The true test, of course, is the intention of the maker."

The determination of the district court that the instrument in question is a deed and that the grantor did deliver it in his lifetime subject only to the condition expressed upon the escrow envelope was correct. The judgment is affirmed.

*Affirmed.*

ASSOCIATE JUSTICES HOLLOWAY, GALEN and STARK concur.

MR. JUSTICE MATTHEWS, being disqualified, did not hear the argument and takes no part in the foregoing decision.

Rehearing denied June 28, 1926.