NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

NOV 21 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

HUGH SUTHERLAND; KIM D.
SUTHERLAND,

          Plaintiff-ctr-defendants -
Appellants,

  v.

PAUL J. WATTERWORTH, as Trustee of
the Paul J. Watterworth Revocable Trust,

          Defendant-ctr-claimant -
Appellee.

No. 24-7579

D.C. No.
9:23-cv-00130-DLC

MEMORANDUM[*]

Appeal from the United States District Court
for the District of Montana
Dana L. Christensen, District Judge, Presiding

Argued and Submitted November 4, 2025
Portland, Oregon

Before: M. SMITH, NGUYEN, and H.A. THOMAS, Circuit Judges.

The parties to this appeal dispute the existence of an easement. Plaintiffs Hugh

and Kim D. Sutherland and Defendant Paul J. Watterworth, as trustee of the Paul J.

Watterworth Revocable Trust, own adjacent properties in Montana. A road called

---

[*]     This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

"Mine Road," over which Watterworth claims an easement, starts in the Sutherlands' property, cuts through Watterworth's property, and continues into property held by non-parties to this litigation. The district court granted Watterworth's motion for summary judgment and held that Watterworth has an express easement over the portion of Mine Road that goes through the Sutherlands' property (the Mine Road easement). The Sutherlands appeal that determination. We have jurisdiction under 28 U.S.C. § 1291. We review the district court's summary judgment decision de novo. *Animal Legal Def. Fund v. FDA*, 836 F.3d 987, 988 (9th Cir. 2016). We affirm.

As the district court observed, the issue in this case is one of timing. A brief recitation of the relevant facts is accordingly necessary. Sagebrush Investments LLP (Sagebrush) once held the properties now owned by Watterworth and the Sutherlands. As Sagebrush divided up its property into different tracts, it recorded three certificates of survey (each individually, COS). Sagebrush recorded COS 484308-R on September 4, 2001; COS 496440-R on May 28, 2002; and COS 498388-R on July 2, 2002. Each COS showed an easement on Mine Road.

On April 19, 2002, Sagebrush, Kenneth Reiber, and Susan Knight executed a Notice of Purchasers' Interest (Reiber/Knight NPI), which was recorded on May 28, 2002. Roughly contemporaneously, Sagebrush, Reiber, and Knight also executed a warranty deed (Reiber/Knight warranty deed), which a depositary held in an escrow until the deed's release and recordation in 2007. Both documents included an exhibit

that described the property and the Mine Road easement. Both exhibits referenced COS 496440-R. Watterworth now owns the property that was the subject of the Reiber/Knight NPI and the Reiber/Knight warranty deed.

On August 1, 2002, Sagebrush conveyed to William and Romona Holt via quitclaim deed the property now owned by the Sutherlands. The quitclaim deed, recorded on October 10, 2002, included an exhibit that provided a legal description of the property. The exhibit referenced COS 498388-R, which described an easement over Mine Road. The Holts then conveyed the property to Ginger Vanek, who conveyed the property to the Sutherlands via warranty deed.

1. In Montana, an easement may be created by instruments "in writing, by operation of law, or by prescription." *Blazer v. Wall*, 183 P.3d 84, 93 (Mont. 2008). As relevant here, the Montana Supreme Court has "recognized the creation of easements by express grant, reservation, exception, or covenant." *Id.* An expressly granted easement appurtenant, like the one at issue here,

> requires the grantor to hold title to both the dominant and servient estates, and the severance of those estates must be made in "a written instrument of conveyance that is substantively sufficient to convey the severed estate, grant or reserve the intended easement, identify the dominant and servient estates, and indicate the nature and scope of the right reciprocally burdening and benefitting the servient and dominant estates."

*Towsley v. Stanzak*, 519 P.3d 817, 822 (Mont. 2022) (quoting *O'Keefe v. Mustang Ranches HOA*, 446 P.3d 509, 516 (Mont. 2019)). "[T]o constitute a valid

conveyance, the instrument must, '(1) identify the grantor and the grantee, (2) adequately describe what is being conveyed, (3) contain language of conveyance, and (4) be signed.'" *Id.* at 823 (emphasis omitted) (quoting *Broadwater Dev., L.L.C. v. Nelson*, 219 P.3d 492, 502 (Mont. 2009)).

We start, for Watterworth's express easement claim, with the Reiber/Knight NPI and the Reiber/Knight warranty deed. As the district court concluded, and Watterworth does not contest, the Reiber/Knight NPI did not establish Watterworth's easement. That is consistent with *Towsley*, where the Montana Supreme Court held that the parties' NPI did not convey an interest in an easement because it did not "contain language of conveyance" but "merely provided notice of a potential grant of the property, to be effectuated by deed upon future performance of the contract." 519 P.3d at 823–24 (internal quotation marks omitted).[1] Instead, Watterworth can establish an express easement through the Reiber/Knight warranty deed, for several reasons.

First, consider the nature of a warranty deed. The Montana Supreme Court has "recognized the general distinction between a warranty deed, which immediately transfers a property interest, and an executory contract for sale and purchase of property, which states conditions precedent to a transfer of property." *Towsley*, 519

---

[1] As the district court recognized, *Towsley* does not resolve the issue because here the Reiber/Knight warranty deed was recorded, unlike the relevant warranty deed in *Towsley*. *Towsley*, 519 P.3d at 824.

P.3d at 824. Montana's real property regime, moreover, recognizes that property consists of both equitable and legal title. That matters especially where, as here, a purchaser obtains real property through a contract for deed. The purchaser holds equitable title and beneficial ownership of the property from the date of the contract, "leaving only the naked legal title in the seller, as trustee for the purchaser, and as security for the unpaid purchase price[,]" until the contractual provisions are fully performed. *Matter of Wooten's Estate*, 643 P.2d 1196, 1199 (Mont. 1982) (quoting *Kern v. Robertson*, 12 P.2d 565, 567 (Mont. 1932)); *accord Hannah v. Martinson*, 758 P.2d 276, 278 (Mont. 1988); *Am. Waterworks & Elec. Co. v. Towle*, 245 F. 706, 710 (9th Cir. 1917). Once the contract is fully performed, legal "title relates back to the date of the execution of the contract" and merges with equitable title. *Calvin v. Custer County*, 107 P.2d 134, 136 (Mont. 1940). That legal sequence is referred to as the doctrine of equitable conversion. *See id.*

Also relevant here are several statutes governing grants of real property. In Montana, "[a] grant [of property] takes effect so as to vest the interest intended to be transferred only upon its delivery by the grantor." Mont. Code Ann. § 70-1-508. "A grant may be deposited by the grantor with a third person, to be delivered on performance of a condition, and on delivery by the depositary, it will take effect. While in the possession of the third person and subject to condition, it is called an escrow." *Id.* § 70-1-511.

Montana law also recognizes constructive delivery when (1) "the instrument is, by the agreement of the parties at the time of execution, understood to be delivered and under circumstances that the grantee is entitled to immediate delivery," or (2) "it is delivered to a stranger for the benefit of the grantee and the grantee's assent is shown or may be presumed." Mont. Code Ann. § 70-1-512. A plain reading of subsection (2) suggests that it may encompass a deed held in escrow—an arrangement wherein a grant is deposited with a third person. *See id.* § 70-1-511.

Section 70-1-511 itself does not disclaim constructive delivery nor demand actual delivery. Instead, several decisions from the Montana Supreme Court indicate that delivery of a deed in escrow and constructive delivery are entirely consistent. For example, in *Blackmer v. Blackmer*, 525 P.2d 559 (Mont. 1974), the Montana Supreme Court concluded that there was "sufficient delivery" of two deeds in escrow where the deeds were delivered with the following excerpted instructions from the grantor: "I am making this delivery to my son and daughter pursuant to Sec. 67-1514 of the 1947 Revised Codes of the State of Montana, which is a constructive delivery." *Id.* at 564. The plaintiffs in *Blackmer* claimed that there was a difference between the predecessors to §§ 70-1-511 and 70-1-512. *Id.* Finding "no need to discuss the difference," the court concluded that "this delivery comes within the meaning of [the predecessor to § 70-1-511] and is therefore a sufficient delivery." *Id. Blackmer* therefore suggests that constructive delivery is not incompatible with

delivery of a deed held in escrow.

In *Carnahan v. Gupton*, 96 P.2d 513 (Mont. 1939), the Montana Supreme Court reviewed a predecessor to § 70-1-511 with virtually identical language. *Id.* at 515. The court explained that though "there must be a delivery of a deed in order to vest title," delivery may be "made by placing the deed in escrow" pursuant to the predecessor of § 70-1-511. *Id.* The court went on to state that "[a]ctual manual delivery is not essential and constructive delivery is sufficient" pursuant to the predecessor of § 70-1-512, which also has language virtually identical to the present-day provision. *Id.* Again, *Carnahan* suggests that the concepts of escrow and constructive delivery are fully reconcilable under Montana law.

In sum, Montana law recognizes constructive delivery, which, by the plain text of § 70-1-512(2), may apply to escrow arrangements. We therefore conclude that equitable title passed to Reiber/Knight in 2002, at the time the warranty deed was executed. Legal title passed in 2007, when the contract was fulfilled and the deed was recorded. And, when legal title passed to Reiber/Knight, it related back to the date of the deed's execution. *See Plymale v. Keene*, 247 P. 554, 556 (Mont. 1926) (discussing the concept of a deed "not immediately delivered to the grantee, but handed to a stranger, to be delivered at a future time," which may include "an escrow," and which "will not take effect as a deed until [a] second delivery," at which point "it will take effect, *by relation, from the first delivery*." (citation

7                                                                                                    24-7579

modified)); *see also id.* ("A deposit of the kind under consideration operates as a conveyance as of the time of the deposit, either as a transfer in praesenti subject to an implied life estate in the grantor or as a transfer at the time of the second delivery *relating back to the time of the deposit*." (citation modified)).

2. The Reiber/Knight warranty deed conveyed an interest in the Mine Road easement that can now be enforced against the Sutherlands. Montana law requires that a subsequent purchaser have notice, including constructive notice, to be bound by an easement. *See Earl v. Pavex, Corp.*, 313 P.3d 154, 166 (Mont. 2013). "Every conveyance of real property acknowledged or proved and certified and recorded as prescribed by law, from the time it is filed with the county clerk for record, is constructive notice of the contents thereof to subsequent purchasers and mortgagees." Mont. Code Ann. § 70-21-302(1). "The term 'conveyance' . . . embraces every instrument in writing by which any estate or interest in real property is created, aliened, mortgaged, or encumbered or by which the title to real property may be affected." *Id.* § 70-21-301.

Here, Sagebrush included in both the Reiber/Knight NPI and the Reiber/Knight warranty deed that the property was being sold and conveyed:

> ALSO TOGETHER WITH a 60 foot wide road and utility easement extending Northerly from 8 Mile Road, through the W½ of Section 1 [(the now-Sutherland property)], along "Mine Road", to the Southeasterly portion of the property herein [(the now-Watterworth property)].

In Montana, when used in a deed with reference to an easement, the words

"together with" create an easement. *Mary Ellen Duke Tr. dated Mar. 13, 1997 v. Lee Lou, LLC*, 535 P.3d 1133, 1139 (Mont. 2023). The district court therefore correctly found that the language of the Reiber/Knight warranty deed created an express easement on the Sutherlands' property over Mine Road.[2]

The issue thus turns on whether the Sutherlands had constructive notice of the Mine Road easement. The Sutherlands argue that they did not because, pursuant to *Towsley*, the Reiber/Knight NPI was not a conveyance and therefore could not impart constructive notice. Watterworth does not challenge this position. Instead, Watterworth maintains that by the time the Holts took possession of the now-Sutherlands' property, COS 484308-R, COS 496440-R, COS 498388-R, and the Reiber/Knight NPI had all been recorded in the Sutherland parcel's chain of title, so both the Sutherlands and their predecessors-in-interest were on constructive notice of the Mine Road easement. *See Earl*, 313 P.3d at 166 ("[A] prospective purchaser is on constructive notice of recorded servitudes and encumbrances granted by the existing and prior owners of the parcel in question during the respective periods when each owner held title to the parcel.").

In light of the above, we affirm the district court's grant of summary judgment in favor of Watterworth. We conclude that the Reiber/Knight NPI comes within the

---

[2] In the district court, the Sutherlands originally contested that the warranty deed contained insufficient language to convey an easement but ultimately abandoned that argument. They do not appear to press this argument on appeal.

statutory definition of "conveyance" pursuant to § 70-21-301 for the purpose of Montana's recording statutes because, as the district court noted, "[c]ontracts for deed certainly 'affect an interest in real property.'" That conclusion is perfectly harmonious with *Towsley*. The Montana Supreme Court there rejected the defendants' argument, which was "premised upon their reading of a sequence of recording statutes" that the NPI at issue "functioned as an abstract of an instrument of conveyance." *Towsley*, 519 P.3d at 822 (emphasis omitted). The Montana Supreme Court did so because "[r]ecordation is a device to establish priority" and "has nothing to do with conveying title." *Id.* at 824 (quoting *Blakely v. Kelstrup*, 708 P.2d 253, 254 (Mont. 1985)). Whether the NPI conveyed an interest in the Mine Road easement and whether it is a "conveyance" for purposes of the recording statutes are therefore separate questions. *See* Mont. Code Ann. § 70-21-301 (providing a definition of "conveyance" that is only applicable to "[§§] 70-21-302 through 70-21-304.").

If the NPI itself were not enough, there are also three COSs in the Sutherlands' chain of title that were each recorded *before* the Holts' deed—those were sufficient to have put the Holts, and subsequently the Sutherlands, on at least constructive notice of the Mine Road easement. *See Earl*, 313 P.3d at 163 (approving "the broad approach" to reviewing chain of title "based . . . upon the principle that a grantee is chargeable with notice of everything affecting his title which could be discovered

10                                                                    24-7579

by an examination of the records of the deeds or other muniments of title of his grantor" (internal quotation marks omitted)); *Scott D. Erler, D.D.S. Profit Sharing Plan v. Creative Fin. & Invs., L.L.C.*, 203 P.3d 744, 757–58 (Mont. 2009) (concluding that a subsequent purchaser "was on constructive notice of [a] recorded assignment to [a prior purchaser]" and that, had the subsequent purchaser "conducted a title search he would have discovered [the prior purchasers'] record interest, which purported to purchase the same vendor interest [that the subsequent purchaser] intended to purchase." (internal quotation marks omitted)).

A properly conducted title search would have unearthed the three separate COSs—each of which included a description of the Mine Road easement—as well as the Holts' deed, which referenced COS 498388-R. *See Erler*, 203 P.3d at 757–58 (reasoning that a subsequent purchaser was not protected by the recording statutes "because he was on notice of a previously assigned interest in the same property, which he failed to investigate prior to purchase."); *Earl*, 313 P.3d 166 (holding "that a prospective purchaser is on constructive notice of recorded servitudes and encumbrances granted by the existing and prior owners of the parcel in question during the respective periods when each owner held title to the parcel."). That the Sutherlands apparently failed to investigate their purchase has no bearing on whether the Mine Road easement is enforceable against them.

3. Because we affirm the district court with respect to Watterworth's expressly

created easement, we do not reach the parties' easement-by-reference arguments.

**AFFIRMED.**